## Louisville Railway Company v. Osborne.

(Decided February 10, 1914.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. **Street Railroads—Injury to Passenger—Burden of Proof.**—Where a passenger on a street car sues to recover damages for injuries sustained by being thrown from the car on account of a sudden jerk or lurch, the burden is on him to show that there was some unusual and unnecessary movement of the car that caused him to fall.

2. **Street Railroads—Evidence of Unnecessary Jerk Causing Passenger to Fall from Car.**—The fact that a passenger who is exercising ordinary care for his own safety is thrown from the platform of a street car by a sudden lurch or jerk of the car, is sufficient to justify the fair and reasonable inference that the

jerking of the car was both unusual and unnecessary. It is sufficient to entitle him to go to the jury if he can state that while exercising reasonable care for his own safety, he was thrown from it by a jerk or lurch in the operation of the car.

3. Street Railroads—Right of Passengers to Ride on Platform and Prepare to Leave Car Before it Stops.—A passenger, in the exercise of reasonable care for his own safety, may stand on the platform of a street car while it is running and may make preparations to leave the car before it stops at the place of his destination by going from the interior of the car to the platform without being guilty of negligence.

4. Street Railroads—Negligence in Operation of Car—Jerks and Lurches.—A passenger can only recover damages on account of jerks or lurches of a car when they are both unnecessary and unusual and of sufficient violence to cause the injury complained of.

HOWARD B. LEE, ALFRED SELIGMAN and FAIRLEIGH, STRAUS & FAIRLEIGH for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, who was a passenger on one of the appellant company's cars, sustained injuries by falling or being thrown from the car, and, alleging that the accident was caused by negligence in the operation of the car, he brought this suit, and on a trial there was a verdict and judgment in his behalf, and the company appeals.

The appellee took passage on a Fourth street car at Fourth and Green for the purpose of riding to Fourth and Breckinridge. When he boarded the car he had a valise and two other packages, which he left on the rear platform and took a seat in the car. He testifies that he told the conductor he wanted to get off at Fourth and Breckinrdge, and when the car passed York street, Breckinridge street being the next street, he rang the bell to also notify the motorman that he wished to get off at Breckinridge; that he then stepped out on the rear platform and engaged in conversation with Dr. Webb, who was standing on the platform and remained on the platform until the accident.

Relating how the accident happened, he said: "When I introduced myself I told him I was a Baptist minister. I remarked, pointing to my baggage, that I had a supply of fresh eggs and chickens that I was bringing from the

country, and then about that time we approached Breckinridge and I said, 'I get off here.' He replied, 'I will assist you with your things.' I turned from him, facing the place of leaving the car, and as I did so I heard a very strong ring of the bell and there was a lurching of the car. I could not say how strong the lurching of the car was. Instantly I was hurled forward, falling on this left side.''

He further said that the car had crossed Breckinridge street and he fell on the south side of the street near the curbing and that the car went about twenty feet after he fell from it before it stopped; that he did not know until he got up that he was on the south side of Breckinridge; that when the car gave a lurch he was standing in a natural position and had turned from Dr. Webb and was facing the place of leaving the car.

Asked to tell again the nature of the lurch or movement of the car that threw him off, he said: ''It is a little difficult to do, because it was done so quickly. The only thing I know is that there was a jerk in some way of the car, and the best I know is that I was thrown off with considerable force forward.''

It might be here noticed although not a material fact in the case, that the regular stop of the car to let off and take on passengers is on the north side of Breckinridge, but the conductor says that he did not know there was a passenger to get off at Breckinridge until the car was very close to the regular stopping place, and he then gave the signal to the motorman to stop, and the motorman testifies that when he received the signal he was too close to Breckinridge to stop on the north side and slowed down the car for the purpose of stopping it on the south side of the street. All parties agree that the car was running slowly when appellee fell off, but there is some little difference as to the number of feet it ran after this before it came to a stop.

Dr. Webb testifies that as he stooped down to get some of the appellee's baggage for the purpose of helping him off, he lost sight of him for a moment and the next moment he heard him falling from the car; that he did not know he fell or got off the car; that the car was running slowly at the time and moved a little distance beyond where appellee fell; that the last time he saw appellee before he fell he was starting to get off the car, and his impression was that he had stepped from the

platform to the step; that the conductor did not notify
the motorman that a passenger wanted to get off until
the car was at or-close to the regular stopping place on
the north side of Breckinridge; that the car was slowing
down to make a stop and that he did not observe any
unusual, sudden, violent jerk of the car of any sort; that
he could not detect any sudden jerking movement of the
car sufficient to cause any man to fall from it.

Other witnesses testified that there was no unusual
jerk or movement of the car at the time appellee fell off.

Upon this evidence it is strongly insisted that there
should have been a directed verdict in favor of the com-
pany.  It may be conceded that the weight of the evidence
tends to show that there was no unusual lurch or jerk in
the movement of the car that caused appellee to fall or
be thrown to the street, but his evidence, although not
supported by any other witness and contradicted by
several, was we think, sufficient to take the case to the
jury.

While we recognize the correctness of the rule that
there can be no recovery in cases like this for accidents
caused by the usual and customary movements of the car,
and that the burden is on the party complaining to show
that there was some unusual and unnecessary movement
that caused him to fall, we nevertheless think that the
positive statement of appellee, that he was thrown to the
street while standing on the platform by a sudden lurch
or jerk of the car, was sufficient to create under the cir-
custances such an inference that the jerking or lurching
of the car was both unusual and unnecessary as to
authorize a jury to pass on the question.  The very fact
that a person standing, as appellee was, on the platform
of a car, is caused to be thrown from the car when it is
slowing down to make a stop, is in itself some evidence
that the jerk or lurch of the car was attended with more
force and violence than was usual or necessary in its
prudent operation.

Nor do we attach much importance to the fact that
appellee was unable to describe more definitely than he
did the movement of the car that he claimed threw him
to the street.  Almost any ordinary traveler would find
some difficulty in describing with exactness the charac-
ter of the movement that he might well designate as a
jerk or a lurch, and it is not required of a passenger who
has been injured by a jerk or a lurch of a car that he

should be able to relate with accuracy how the jerk or lurch occurred or its violence or what caused it. It is sufficient to entitle him to go to the jury if he can state that while occupying a usual place on the car and exercising reasonable care for his own safety, he was thrown from it by a lurch or jerk in the operation of the car. Louisville Railway Co. v. Williams, 30 Ky. L. R., 493; Paducah Traction Co. v. Baker, 130 Ky., 360.

It is further complained that the court erred in refusing certain instructions offered by the company and in the instructions that were given. The petition merely charged in a general way that by the negligence of the defendant the plaintiff was thrown to the street while he was attempting to leave the car, and the answer was only a traverse and a plea in general terms of contributory negligence. But, while the petition did not state the specific negligence relied on, or the answer describe the particuler contributory negligence of which it is alleged the plaintiff was guilty, the evidence for the plaintiff showed with certainty the specific negligence he relied on, and the evidence for the defendant showed that it was not guilty of this negligence.

Under this evidence the only substantial issues in the case were: was appellee caused to fall or be thrown from the car by some unusual and unnecessary movement of the car, or did he fall from the car on account of some careless act of his own while the car was being operated in such a manner as to be free from any movements except those that usually attend prudent and careful operation?

The instructions given by the court did not, in our opinion, submit clearly to the jury these issues. It was not improper to tell the jury, as was done in instruction number one, that it was the duty of the company to exercise the highest degree of care usually exercised by prudently managed carriers to carry the plaintiff in safety; nor was it error to advise them, as was done in instruction number three, that the plaintiff had the right to go to the platform before the car stopped, for the purpose of getting off as it approached his destination.

Counsel for the company complain of instruction three, but there is a well-recognized distinction between the rights of passengers on railroad trains and street cars respecting what they may do preparatory to getting off, and in standing on the platform. It may or may not

be negligence, depending on the facts of the particular case, to make preparations to leave a railroad car before it comes to a stop or to stand on the platform of the car of a railroad train while it is running. Sandlin v. Lexington Ry. Co., 110 S. W., 374; L., H. & St. L. Ry. Co. v. Stillwell, 142 Ky., 330. It is, however, customary for persons to stand on the platform of street cars while they are running and to make preparations to leave the car before it comes to a stop. This custom is of such common and general use that it may be said to be approved by street railway companies, and so a passenger, in the exercise of reasonable care for his own safety, may stand on the platform of a street car while it is running, and may make preparations to leave the car before it comes to a stop at his place of destination, by going from the interior of the car to the platform without being guilty of negligence. The platforms on street cars are so arranged as to not only permit but invite passengers to stand on them when the car is running, and in accordance with this usage, which is recognized and permitted by street railway companies, a passenger has the right to stand on the platform and go from the inside of the car to the platform before the car stops at his destination.

But we think the other matters in instructions numbers one and three were not pertinent to the issues in the case and should have been omitted. In instruction number three the jury were correctly told that it was the duty of plaintiff when upon the platform to exercise such care for his own safety as is usually and ordinarily exercised by prudent persons under like or similar circumstances, and in instruction four they were told "but if he did exercise that degree of care for his own safety, but nevertheless when he was upon the rear platform the car gave an unusual or sudden jerk, and by reason of said unusual movement or jerk of the car plaintiff was thrown from the platform and received the injuries of which he complains, then the law is for the plaintiff and you should so find."

As plaintiff's right of recovery was rested upon the distinct ground that he was thrown from the car by an unusual and sudden movement of the car, it is at once apparent that it was important that the instruction submitting this issue should have clearly defined the rights of the plaintiff and the duty of the defendant, and we do

not think this instruction described correctly the duty of the defendant.

We understand it to be the well-settled rule in this State that a carrier of passengers is not guilty of legal negligence arising from an alleged dangerous movement of the car unless the movement was both unnecessary and unusual and of sufficient violence to indicate negligence in the operation of the car. It is not sufficient to constitute negligence in law that there may be an unusual movement of the car or a sudden jerk of the car. An unusual movement, under some circumstances, might be entirely necessary in the prudent operation of the car, and so when the charge is that the movement was unusual, it should also appear that it was unnecessary, and when it is both unusual and unnecessary and of sufficient violence to cause injury to a passenger, the jury may infer that the injury was caused by negligence in the operation of the car.

A sudden jerk may or may not be negligence. It may or may not be violent. A car might give a sudden jerk and yet the jerk be a very slight one and such a one as often happens in the usual and prudent operation of a car. It is a matter of common knowledge that on every train and on every car there are sudden jerks, some of them slight, some of them violent; some of them may be necessary and others unnecessary, but the carrier is not liable for an accident that happens on account of a sudden jerk unless it was unnecessary and violent. A slight jerk, although it may be unnecessary, is to be expected in the ordinary movement of the cars and cannot be made the basis of an action for negligence. But where a jerk is unusual, unnecessary and violent, it may be made the basis of an action for negligence: Wilder v. Louisville Ry. Co., 157 Ky., 17.

Measured by these standards of duty, it is manifest that instruction number four, the most important instruction in the case, did not submit correctly the law, and also that it was prejudicial to the substantial rights of the company. Under this instruction the jury were authorized to find against the company if they believed from the evidence that the car gave an unusual or sudden jerk, although they might also have believed that the jerk was necessary in the prudent operation of the car or was not of sufficient violence to indicate negligence in its operation.

In place of instruction number four the jury should have been instructed in substance that if they believed from the evidence that while the plaintiff, in the exercise of ordinary care for his own safety, was standing on the platform of the car,.he was caused to fall from it by an unusual and unnecessary jerk in the movement of the car of sufficient violence to indicate a want of the required care in the operation of the car as defined in instruction number one, they should find for the plaintiff; but, on the other hand, if they believed from the evidence that the plaintiff was not caused to fall from the car by an unusual and unnecessary movement of the car of sufficient violence to indicate a want of the required care in the operation of the car as defined in instruction number one, but that he fell on account of some careless act of his own, they should find for the defendant.

For the reasons indicated, the judgment is reversed, with directions for a new trial in conformity with this opinion.