RENDERED:  SEPTEMBER 11, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2017-CA-001656-MR


JENNIFER FORD, M.D.                                           APPELLANT


ON REMAND FROM THE SUPREME COURT OF KENTUCKY
APPEAL NO. 2019-SC-000435-DG
APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE BRIAN C. EDWARDS, JUDGE
ACTION NO. 15-CI-001368


STEVEN J. REISS, M.D.; AND
BAPTIST HEALTH MEDICAL
GROUP, INC., D/B/A BAPTIST
NEUROLOGICAL SURGERY                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  LAMBERT, MAZE, AND TAYLOR, JUDGES.

LAMBERT, JUDGE:  Jennifer Ford, M.D. appealed from a final judgment of the

Jefferson Circuit Court in favor of appellee Baptist Health Medical Group, Inc.

("Baptist Health") in Ford's medical negligence claim.  She argued that the trial

court failed to strike three jurors for cause, erred in ruling on an evidentiary issue, and erroneously permitted Baptist Health to present inappropriate burden of proof arguments during *voir dire*. We affirmed in an opinion rendered May 3, 2019, holding, in part, that Ford did not properly preserve her juror strike issue pursuant to *Gabbard v. Commonwealth*, 297 S.W.3d 844, 854 (Ky. 2009), because she failed to identify additional jurors she would have stricken with a peremptory challenge on her strike sheet after the trial court refused to strike them for cause. Ford filed a motion for discretionary review with the Supreme Court of Kentucky, which the Court granted in an opinion and order entered February 12, 2020. In that opinion and order, the Supreme Court vacated our original decision and remanded the case for further consideration in light of its recent decision in *Floyd v. Neal*, 590 S.W.3d 245 (Ky. 2019). Having permitted the parties to file supplemental briefs addressing this case and further considering the matter, we again affirm, although this time on the merits.

On March 23, 2015, Ford asserted a claim of medical negligence against Baptist Health in the Jefferson Circuit Court on the grounds that treating physician Steven J. Reiss, M.D. ("Dr. Reiss") negligently failed to timely anticipate, identify, diagnose, and correctly address a rare neurosurgical emergency

called cauda equina syndrome.[1]  Ford initially asserted claims against Dr. Reiss, but all claims against him were dismissed before trial.  Ford claimed she sustained permanent injuries as a result of the alleged negligence and was consequently entitled to an award of damages to recoup her medical expenses and lost wages and compensation for her pain and suffering.

This matter proceeded to a jury trial against Baptist Health, beginning on April 25, 2017.  After hearing the parties' proof, a Jefferson County jury returned a verdict in favor of Baptist Health.  On May 16, 2017, the trial court entered a judgment in accordance with the jury verdict.  Ford subsequently moved for a new trial pursuant to Kentucky Rule of Civil Procedure ("CR") 59.05, which was denied by order entered September 14, 2017.  This appeal followed.

Before we address the merits of Ford's claims, we must address two procedural issues.  First, Ford attempts to appeal from the trial court's order denying a new trial.  This Court has consistently held an "order denying [a] CR 59.05 motion [is] an inherently interlocutory and non-appealable order." *Jones v. Livesay*, 551 S.W.3d 47, 49 (Ky. App. 2018).  When an appellant states she is

---

[1] As described in Ford's brief, the cauda equina is a bundle of nerves that hang in a free-floating manner at the end of the spinal cord and resemble a horse's tail.  These nerves control the sensory and motor functions of the bladder, rectum, anus, perineum/labia/vagina, and parts of the legs.  Permanent injury can lead to permanent incontinence in bowel and bladder, foot drop, and other injuries.  The cauda equina nerves are susceptible to permanent injury from compression, such as from a herniated disc, because they do not have the protective coating possessed by other nerves in the spinal cord.

appealing the interlocutory order denying CR 59.05 relief, we should ignore it because "[t]here is no appellate jurisdiction over the typical interlocutory order." *Cassetty v. Commonwealth*, 495 S.W.3d 129, 132 (Ky. 2016). Therefore, we address only the issues Ford raises as to the final judgment.

Second, Ford's brief is deficient. Although not commented on by Baptist Health, Ford's brief lacks a preservation statement for each argument. CR 76.12(4)(c)(v) requires a statement of preservation:

> so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration. It also has a bearing on whether we employ the recognized standard of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012). "Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). In this case, we elect to ignore the deficiency because Ford's recitation of the procedural history contains numerous cites to the record.

For her first argument, Ford asserts the trial court erred when it failed to strike three jurors for cause, forcing her to use peremptory strikes to eliminate

them from the pool. Ford further argues she would have used her peremptory strikes to eliminate potential jurors who were insurance company employees or were otherwise objectionable (specifically, Juror Numbers 14, 5, and 28; Juror Numbers 14 and 28 were sworn in as members of the jury, and Juror Number 14 was the foreperson).

Although Baptist Health did not raise a preservation issue in its brief, we originally held that Ford's argument was not properly preserved for appellate review, citing *Gabbard*, 297 S.W.3d at 854 ("[I]n order to complain on appeal that [she] was denied a peremptory challenge by a trial judge's erroneous failure to grant a for-cause strike, the [party] must identify on [her] strike sheet any additional jurors [she] would have struck."); and *Grubb v. Norton Hospitals, Inc.*, 401 S.W.3d 483, 487 (Ky. 2013) (extending the requirement in *Gabbard* to civil cases). While Ford orally informed the trial court which jurors she would have struck had it granted the requested for-cause strikes, her strike sheet lacked any such notation. Because the Supreme Court of Kentucky made clear in *Paulley v. Commonwealth*, 323 S.W.3d 715, 720 (Ky. 2010), that in "all cases tried after finality of our decision in *Gabbard*," parties must identify on their strike sheet any additional jurors they would have struck in order to properly preserve the issue for appeal, and as Ford failed to do so, we held that we could not address her unpreserved argument.

In her petition for rehearing, Ford cited to the Supreme Court's opinion of *Sluss v. Commonwealth*, 450 S.W.3d 279 (Ky. 2014), *overruled on other grounds by Floyd*, 590 S.W.3d 245, to support her argument that she had substantially complied with the preservation rule by orally stating the jurors on whom she would have used a peremptory strike had the jurors in question been stricken for cause.

> As to juror Booth, the ultimate issue as to preservation is whether Sluss complied with our holding in *Gabbard* that the defendant must identify *on the strike sheet* other jurors he would have struck. Sluss alleges that he "substantially complied" with *Gabbard* by stating orally on the record, during a request for additional peremptory challenges, that if he was granted additional challenges he would have struck four additional jurors, which he listed by name. This list included Joyce Hedges, who eventually sat on the jury. Sluss argues that this statement on the record was enough to preserve his challenge under *Shane* [*v. Commonwealth*, 243 S.W.3d 336 (Ky. 2007),] and *Gabbard*. We agree.

*Id.* at 284-85. We denied the petition, and Ford sought discretionary review in the Supreme Court, which was granted as set forth above. We have now further considered our original holding as to preservation pursuant to the Supreme Court's direction.

In *Floyd v. Neal*, *supra*, the Supreme Court of Kentucky thoroughly examined the law on for-cause strike preservation, clarified the procedure necessary to preserve this argument for review, and prospectively overruled its

prior holding in *Sluss* on this issue. Discussing its holding in *Sluss*, the Supreme

Court stated:

> [T]his Court made a drastic change to the *Gabbard* holding a year later in *Sluss v. Commonwealth*. . . . [The above-quoted passage from *Sluss*] was the entirety of the analysis on the issue of preservation. No supporting case law or reasoning for this change to the *Gabbard* rule was discussed. Further, the focus of *Sluss* was really about whether Juror Booth could have been rehabilitated under *Montgomery v. Commonwealth*, [819 S.W.2d 713 (Ky. 1991),] and to clarify the holding in that case[.] The point being, *Sluss* resulted in a major sea change in the *Gabbard* jurisprudence when at its core it was not even about *Gabbard*. Therefore, the potential problems with altering the *Gabbard* rule in such a way were not sufficiently fleshed out.

*Floyd*, 590 S.W.3d at 249-50 (footnotes and paragraph breaks omitted).

The Court then set forth "a definitive statement of the procedure

required to preserve a for cause strike error[.]" *Id*. at 250. That procedure consists

of six steps:

> (1) move to strike the juror for cause and be denied; (2) exercise a peremptory strike on said juror, and show the use of that peremptory strike on the strike sheet, and exhaust all other peremptory strikes; (3) clearly indicate by writing on her strike sheet the juror she would have used a peremptory strike on, had she not been forced to use a peremptory on the juror complained of for cause; (4) designate the same number of would-be peremptory strikes as the number of jurors complained of for cause; (5) the would-be peremptory strikes must be made known to the court prior to the jury being empaneled; and (6) the juror identified on the litigant's strike sheet must ultimately sit on the jury.

*Id.* at 252. The Court concluded by stating, "We also prospectively overrule *Sluss v. Commonwealth*'s holding that stating would-be peremptory strikes verbally on the record constitutes substantial compliance with *Gabbard*." *Id.*

In her supplemental memorandum related to the application of *Floyd*, Ford points out that the Supreme Court opted to prospectively overrule its holding in *Sluss*, meaning that *Sluss* was still good law when her case was tried in 2017. Ford then asserts that she had substantially complied with the preservation rule by orally stating the jurors she would have used a peremptory strike on had the jurors in question been stricken for cause. In its supplemental memorandum, Baptist Heath states that the *Floyd* Court describes *Sluss* as an aberration and questions why the Supreme Court would want this Court to revert to an analysis under *Sluss* that would be inconsistent with its holding in *Floyd*. Because the Supreme Court specifically stated that it was prospectively overruling *Sluss*, we agree with Ford that *Sluss* still applied to her case and that she adequately preserved the issue for our review. Therefore, we shall consider the merits of Ford's argument.[2]

---

[2] Ford has provided this Court with supplemental authority from a recent opinion of the Supreme Court in which it confirmed that its holding in *Floyd* had prospective application: "We further note that, although Curry's trial took place before this Court's recent holdings in *Floyd v. Neal*, 590 S.W.3d 245 (Ky. 2019) and *Ward v. Commonwealth*, 587 S.W.3d 312 (Ky. 2019), and is therefore not subject to their authority, Curry nonetheless also complied with their holdings regarding preservation of this issue." *Curry v. Commonwealth*, No. 2019-SC-000306-MR, 2020 WL 2831836, at *6 n.24 (Ky. May 28, 2020). Baptist Health objected to Ford's citation to this supplemental authority, arguing that footnote 24 was referencing the rule in *Gabbard*, which remains the law in Kentucky. At the time of this writing, the opinion in *Curry* is not yet final,

In *Ward*, 587 S.W.3d at 327-28, the Supreme Court set forth law related to jury selection, recognizing the right to an impartial jury as a substantial right:

> "Defendants are guaranteed the right to an impartial jury by the Sixth Amendment to the United States Constitution, as well as Section Eleven of the Kentucky Constitution. Denial of a defendant's right to an impartial jury is a structural error." Accordingly, we review claims of a tainted jury for structural error. As such, harmless error analysis is not appropriate, and prejudice is presumed.
>
> Kentucky Rule of Criminal Procedure ("RCr") 9.36(1) identifies when a trial court should excuse a juror for cause: "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." A trial court's decision on whether to strike a juror for cause is reviewed for abuse of discretion. "Ultimately, '[i]t is the totality of all the circumstances . . . and the prospective juror's responses that must inform the trial court's ruling.'" And "the mere fact that a prospective juror has been the victim of a crime like the crime being tried does not by itself imply a disqualifying bias. Additional evidence of bias is required." "Obvious factors bearing on the likelihood of bias are the similarity between the crimes, the length of time since the prospective juror's experience, and the degree of trauma the prospective juror suffered."

---

and we did not rely on its holding to determine that *Sluss* applied in this case. Therefore, we shall deny this motion as moot in a separate order. However, even if we were to rely upon the Supreme Court's statement in footnote 24, we disagree with Baptist Health's interpretation of how that footnote applies to the present case. We believe that the footnote confirms that the holdings in *Floyd* and *Ward* would not apply in cases where the trial was held before those opinions were rendered, such as the trial in the present case. This means that *Sluss* was still good law when the trial was held in 2017. If that were not true, the *Floyd* Court would not have needed to specifically overrule *Sluss*.

At the same time, we must adhere to the principle "that objective bias renders a juror legally partial, despite his claim of impartiality." It is the "*probability* of bias or prejudice that is determinative in ruling on a challenge for cause." The trial judge must "weigh the probability of bias or prejudice based on the entirety of the juror's responses and demeanor. *There is no 'magical question' that can rehabilitate a juror as impartiality is not a technical question but a state of mind.*"

(Footnotes omitted). With this in mind, we shall consider Ford's argument.

In the present case, the trial court denied Ford's motion to strike three jurors for cause: two who were receiving care and treatment from physicians employed by Baptist Health (Jurors 7 and 43) and one who was professionally acquainted with Dr. Reiss (Juror 19). We shall address Jurors 7 and 43 first.

As she did below, Ford cites to *Bowman ex rel. Bowman v. Perkins*, 135 S.W.3d 399 (Ky. 2004), in support of her argument the two jurors' close relationship with Baptist Health through their physicians required that they be stricken for cause.

A trial court enjoys wide discretion in ruling upon challenges of prospective jurors for cause. *Commonwealth, Dep't of Highways v. Devillez*, Ky., 400 S.W.2d 520, 521 (1966). On the other hand, "[t]he prevailing rule is that a juror should be disqualified when the juror has a close relationship with a victim, a party or an attorney, even if the juror claims to be free from bias." *Butts v. Commonwealth*, Ky., 953 S.W.2d 943, 945 (1997). A trial court should presume the possibility of bias of a juror if said juror has "a close relationship, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses," regardless of the answers

-10-

said juror may give during voir dire. *Ward v. Commonwealth*, Ky., 695 S.W.2d 404, 407 (1985) (quoting *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4, 7 (1981)). "Once that close relationship is established, without regard to protestations of lack of bias, the court should sustain a challenge for cause and excuse the juror." *Id.*

In our view, a current and ongoing physician-patient relationship is such a close relationship where a trial court should presume the possibility of bias. For that reason, we hold that a prospective juror who is a current patient of a defendant physician in a medical malpractice action should be discharged for cause.

*Id.* at 402. However, *Bowman* concerned a three-physician medical practice where the jurors in question had a physician/patient relationship with a named defendant, which is far different from the situation in this case.

In its brief, Baptist Health describes the system as follows: "Baptist Health Medical Group, Inc. is a comprehensive network which includes more than 800 physicians and advanced practice clinicians across Kentucky. Its providers represent more than 85 specialties. The Baptist Health organization consists of 8 hospitals and more than 250 outpatient facilities and services." We must agree with Baptist Health that *Bowman* is distinguishable from this case because neither of the potential jurors was a patient of Dr. Reiss, his partner, or his medical office. These jurors' relationships with physicians in separate groups under the Baptist Health umbrella do not reach the close relationship set forth in *Bowman*. As the trial court ruled, merely being a patient of a doctor affiliated with Baptist Health is

-11-

not a close relationship necessitating the striking of that individual for cause. In addition, we disagree with Ford's assertion that the potential jurors could believe that a threat to Baptist Health's corporate entity also constituted a threat to their own physician. Therefore, we hold that the trial court did not abuse its discretion in denying Ford's motion to strike Jurors 7 and 43 for cause.

As to Juror 19, this juror stated that she had a professional acquaintance with Dr. Reiss, who was Ford's treating physician – and whose treatment Ford was challenging in her action – as well as an expert witness for Baptist Health at trial. The trial court questioned this juror about her relationship with Dr. Reiss as follows:

> Court: Does anyone here know Mr. Toner or any of the individuals that he just introduced? . . .
>
> Juror: Just a professional acquaintance.
>
> Court: Of which individual?
>
> Juror: Of Dr. Reiss.
>
> . . . .
>
> Court: Do you believe that your knowledge of Dr. Reiss, would it get in the way of you being fair to Dr. Ford?
>
> Juror: I don't believe so.
>
> Court: Think you could listen to the evidence, you wouldn't start off leaning in favor of Dr. Reiss?
>
> Juror: I don't think so.

Based upon this examination and the lack of any follow-up questions by Ford as to this relationship, we agree with the trial court that there was no reason to presume bias as to Juror 19. We therefore hold that the trial court did not abuse its discretion in denying Ford's motion to strike this juror for cause.

Second, Ford argues the trial court erred when it permitted Baptist Health to present an implicit comparative negligence defense after granting summary judgment on the issue. More specifically, Ford asserts Baptist Health was permitted to refer to her as a "sophisticated" patient because she is an obstetrician/gynecologist and argues this was a backdoor approach to place blame on her. We review a trial court's evidentiary ruling for abuse of discretion. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000); *see also Pauly v. Chang*, 498 S.W.3d 394, 411 (Ky. App. 2015). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Ford raised this issue as an oral motion *in limine* during a pretrial conference. Although Ford did not submit a written motion *in limine* regarding references to her as "sophisticated," the parties engaged the trial court in a lengthy discussion of Baptist Health's ability to cross-examine Ford. The trial court denied Ford's motion, despite previously granting summary judgment as to comparative

fault, stating, "I'm not going back or reversing my prior order, but I don't think we need to make a blanket total prohibition, which I think would effectively prevent them from even cross-examining Dr. Ford." The trial court further stated, "The jury knows that she's a doctor. I don't think that there's any real prejudice that's going to be created by saying that she's a sophisticated patient. I mean, the jury knows that." Although Ford's brief cites to repeated references to her "sophistication" throughout the trial, her brief does not mention any contemporaneous objections to such references. However, "[m]otions in limine can preserve issues for appellate review, provided they are sufficiently detailed about what the moving party intends to exclude." *Montgomery v. Commonwealth*, 505 S.W.3d 274, 280 (Ky. App. 2016) (citing *Lanham v. Commonwealth*, 171 S.W.3d 14, 22 (Ky. 2005)). Based on our review of the pretrial hearing, Ford's oral motion *in limine* was sufficiently specific as to the particular testimony she sought to exclude.

Even though Ford preserved this issue for our review, her argument lacks merit. Our rules require litigants to provide this Court with "citations of authority pertinent to each issue of law[.]" CR 76.12(4)(c)(v). Ford provides no citation to authority in support of this argument and instead makes the unsupported argument that referring to her as "sophisticated" somehow implies she interfered with Baptist Health's medical treatment and, thus, was partially at fault for her own

-14-

injuries.  *Pauly*, 498 S.W.3d at 416.  Her argument merely consists of conclusory statements and a self-serving interpretation of the facts without indicating to this Court what legal authority entitles her to relief on those facts.  Without more, we will not further evaluate the trial court's reason for denying Ford's motion *in limine* regarding use of the word "sophistication" and say no more.

Ford's third argument is that the trial court erred in permitting Baptist Health, during *voir dire*, to advise the jury the Plaintiff bore the burden of proof and to describe that burden.  Ford further argues there is no burden of proof in a civil case.  The trial court heard Ford's objection and found that Baptist Health made no erroneous statements during *voir dire*.  Ford requested the trial court admonish the jury that Baptist Health's assertions regarding the burden of proof were incorrect.  The trial court made no formal ruling but stated it would remind the jury "attorneys do not instruct on the law . . . and that the court has the sole obligation to provide the law and the instructions in the case."  The trial court indicated it would rule on the issue prior to opening statements.  Ford failed to request a ruling at that time, so the trial court never directly ruled on the issue. "Our case law is well established that a failure to press a trial court for a ruling or an admonition on an objection or on a motion for relief operates as a waiver of that issue for purposes of appellate review."  *Perkins v. Commonwealth*, 237 S.W.3d

215, 223 (Ky. App. 2007).  Thus, Ford waived this issue, so we cannot address her argument on appeal.

For the foregoing reasons, we affirm the judgment of the Jefferson Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

William F. McMurry
Mikell T. Grafton
Louisville, Kentucky

BRIEF FOR APPELLEE BAPTIST HEALTH MEDICAL GROUP, INC.:

Gerald R. Toner
Andie Brent Camden
Caitlin E. Housley
Louisville, Kentucky